NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case.  A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-734

COMMONWEALTH

vs.

LARRY AHART.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

In 2009, following a jury trial in the Superior Court, the defendant, Larry Ahart, was convicted of unlawful possession of a firearm.  In 2011, after a subsequent jury trial in the Superior Court, the defendant was found to be an armed career criminal (ACC) by unlawfully possessing the firearm having been convicted of three predicate offenses.  See G. L. c. 269, § 10G (c).  In two earlier appeals, different panels of this court affirmed the defendant's convictions and orders denying several postconviction motions.  See Commonwealth v. Ahart, 94 Mass. App. Ct. 1103 (2018); Commonwealth v. Ahart, 88 Mass. App. Ct. 1114 (2015).  The defendant now appeals from orders denying his fifth and sixth motions for a new trial, his motion to

dismiss the indictments, his motion for funds for postconviction discovery, and his motion to revise and revoke his sentence; and allowing the Commonwealth's motion to correct the docket. We affirm.

Background. In affirming the defendant's convictions, a panel of this court described the underlying facts as follows.

"On October 21, 2005, at approximately 11:25 P.M., Officer Stephen Kelly responded to a radio call about a fight in the area of 144 Harvard Street in Cambridge. As Kelly turned onto Harvard Street, he observed a brown Honda leaving the parking area in reverse at a high speed. Kelly followed the vehicle and stopped it at the intersection of Broadway and Antrim Streets. When the Honda stopped, the front passenger door opened, and the defendant took one or two steps before falling face first on the sidewalk. The defendant had a severe stab wound on the lower left side of his back. There was a large amount of blood on his T-shirt and on the passenger seat. Inside the Honda, Detective Steven Lyons found a black cylindrical object, which appeared to be a firearm accessory.

"At the scene on Harvard Street, Officer Brian Hussey walked around the area and discovered a black sweatshirt on the trunk of a car. There was a large amount of blood on the sweatshirt, and the left rear of the sweatshirt had a puncture hole. Wrapped in the sweatshirt was a working 9mm firearm, with five live cartridges inside a magazine capable of holding ten.

"Less than half an hour earlier, at 11:06 P.M., Officer James Dwyer had responded to a call at Rindge Street and Clifton Street. That location is two miles away and a five-minute drive from 144 Harvard Street. At Rindge and Clifton, Dwyer found ten discharged cartridge casings, five of which were for a 9mm firearm. The discharged cartridge casings later were examined in comparison to the 9mm firearm and live cartridges found at Harvard Street, and were determined to have been fired from that firearm.

"The sweatshirt and the firearm found at Harvard Street were examined by the State police crime laboratory. No

2

fingerprints could be obtained from the gun. However, there were other forensic findings. There was gunshot residue on the right and left sleeves of the sweatshirt. Deoxyribonucleic acid (DNA) was extracted from the bloodstained area of the sweatshirt, as well as the neckline, and was determined to be consistent with the defendant's DNA profile. Blood was found on the slide and grip of the firearm, and the defendant was determined to be a potential contributor to the DNA found on these areas. Although no blood was found on the trigger of the firearm, DNA was present. The major source of that DNA was found to match the DNA profile of the defendant."

Following his conviction of unlawful possession of a firearm, the defendant filed a notice of appeal. On August 21, 2009, the defendant filed his first motion for a new trial pursuant to Mass. R. Crim. P. 30 (b), as appearing in 435 Mass. 1502 (2001), which a Superior Court judge denied. In 2011, the defendant appealed from his conviction of the ACC enhancement. The defendant then filed three more unsuccessful motions for a new trial and thereafter appealed from the orders denying his second and third new trial motions. The defendant's appeals were consolidated, and on November 23, 2015, a panel of this court affirmed the judgment and orders. On July 31, 2017, the defendant filed a motion for relief from unlawful confinement, which was denied. A different panel of this court affirmed the order of denial on September 28, 2018.

The defendant subsequently filed the various postconviction motions that are the subject of the present appeal. Specifically, on March 11, 2019, the defendant filed his fifth

3

motion for a new trial, in which he argued, inter alia, that he received ineffective assistance of counsel during the firearm possession trial. A Superior Court judge denied the defendant's motion on May 8, 2019. On June 10 and August 22, 2019, the judge denied two subsequent motions to reconsider that decision. On September 30, 2019, the defendant filed a motion to dismiss the indictments against him pursuant to Mass. R. Crim. P. 30 (a), as appearing in 435 Mass. 1501 (2001). That motion was denied on October 28, 2019, by the same judge who denied the fifth new trial motion. On March 4, 2020, the defendant filed a motion to revise and revoke his sentence pursuant to Mass. R. Crim. P. 29 (a) (2), as appearing in 474 Mass. 1503 (2016). The Commonwealth opposed the motion and filed a motion to correct the docket. On December 11, 2020, the defendant filed a motion for funds to conduct a postconviction discovery investigation. On March 31, 2021, a different Superior Court judge entered orders denying the defendant's motions and allowing the Commonwealth's motion.[1]

On January 3, 2022, the defendant filed his sixth motion for a new trial, again asserting a claim of ineffective assistance of counsel during the firearm possession trial.

---

[1] The Superior Court judge who denied the defendant's motion to revise and revoke subsequently denied two motions to reconsider.

4

After a nonevidentiary hearing, another Superior Court judge denied the motion on February 29, 2024. The defendant filed timely notices of appeal from the orders denying each of his motions, and the appeals were consolidated in this court.

*Discussion.* 1. *Motions for new trial.* The defendant claims that the Superior Court judges abused their discretion in denying his fifth and sixth motions for a new trial. Pursuant to rule 30 (b), a judge may grant a new trial "if it appears that justice may not have been done." "In reviewing the denial of a motion for new trial, we examine the motion judge's conclusions only to determine whether there has been a significant error of law or other abuses of discretion" (quotation and citation omitted). Commonwealth v. Ferreira, 481 Mass. 641, 648 (2019). See L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014). "Motions for a new trial are granted only in extraordinary circumstances." Commonwealth v. Comita, 441 Mass. 86, 93 (2004).

Where a motion for a new trial is based on ineffective assistance of counsel, the defendant must show that the behavior of counsel fell "below that . . . [of] an ordinary fallible lawyer" and that such failing "likely deprived the defendant of an otherwise available, substantial ground of defence." Commonwealth v. Saferian, 366 Mass. 89, 96 (1974). See Commonwealth v. Millien, 474 Mass. 417, 432 (2016).

5

We begin by noting, as did the judges who denied the defendant's motions, that the defendant failed to raise the present ineffective assistance claims in any of his prior motions for new trial, even though the claims were available to him. Therefore, these claims are waived, and we review them only to determine whether a substantial risk of a miscarriage of justice occurred. See Commonwealth v. Duguay, 492 Mass. 520, 540 (2023); Commonwealth v. Randolph, 438 Mass. 290, 294-295 (2002).

a. Testimony about cylindrical object. During the firearm possession trial, Detective Lyons testified that in the "rear driver's side" of the vehicle in which the defendant was a front seat passenger, "there was a black cylindrical object" that he "believed to be some kind of accoutrement to a firearm, possibly a flash suppressor." The defendant contends that trial counsel was ineffective for failing to object to or seek to exclude this "improper opinion" testimony.

The record reflects that trial counsel made a considered strategic decision to allow the jury hear evidence about the cylindrical object. In an affidavit accompanying the defendant's fifth new trial motion, trial counsel explained that any decisions that he made relating to the cylindrical object were "part of [his] overall plan to put any evidence relating to a firearm on others than the defendant." Indeed, there was

6

evidence that an officer saw a "male in a back seat reaching down as if he was putting something under the seat," and that the cylindrical object was found where the rear seat passenger was sitting. In an effort to use such evidence to the benefit of the defendant, trial counsel elicited testimony about the object and where it was found, and later stated in his closing argument that the rear passenger was "fumbl[ing] around" in the back seat and was "obviously hiding something, and they find a gun-related thing." Under these circumstances, we cannot say that it was unreasonable for trial counsel not to challenge evidence of the cylindrical object in order to suggest that a third party possessed the object as an accoutrement to the firearm. See Commonwealth v. Rondeau, 378 Mass. 408, 413 (1979) ("arguably reasoned tactical or strategic judgments" do not amount to ineffective assistance of counsel unless they are "manifestly unreasonable" [citation omitted]). Accordingly, we discern no abuse of discretion in the denial of the defendant's fifth motion for a new trial.[2]

---

[2] The defendant also claims that a different Superior Court judge erred in denying his motion for funds for a "postconviction investigation into the object's identity." In view of the proper denial of the defendant's fifth motion for a new trial discussed above, we discern no error in the judge's conclusion that the defendant "failed to demonstrate that the discovery he requests will lead to evidence possibly warranting a new trial or that this evidence would have materially benefited the defense and factored into the jury's

7

b.  Gunshot residue (GSR) evidence.  The defendant also contends that trial counsel was ineffective for failing to challenge the admission of GSR evidence, and that prior appellate counsel was ineffective for failing to raise the issue in previous appeals.  Specifically, he claims that (1) the testimony of the Commonwealth's expert, John Biello, deviated from the GSR testimony in Commonwealth v. Pytou Heang, 458 Mass. 827 (2011), because it failed to inform the jury about the possibility of transference, and (2) the GSR evidence prejudiced him because it was "irrelevant due to contamination from the sweatshirt being in direct contact with the firearm."

In Pytou Heang, 458 Mass. at 851, the Supreme Judicial Court concluded that GSR evidence was relevant to suggest that the defendant "had either recently fired a weapon, been in the presence of someone who had fired a weapon, or had come into contact with someone who had recently fired a weapon."  At trial in the present case, Biello testified that a positive result for GSR would indicate that "the person fired a weapon, they were in close proximity to a weapon being fired or they had just handled a weapon that had been fired."  While Biello did not state that a positive result for GSR could be the result of transference, trial counsel elicited testimony from him on cross-examination

deliberations."  See Commonwealth v. Camacho, 472 Mass. 587, 598 (2015).

8

about "potential sources of GSR contamination," and Biello agreed that there could be "contamination" where "a policeman who has been at the range handles shortly thereafter a piece of clothing." The jury also heard testimony from another expert, Paul Zambella, who described GSR particles as "very sensitive in nature," which "can be moved or lost very easily." Moreover, Zambella confirmed on cross-examination that, according to the "principle of transference . . . when you touch something you leave something." Thus, we agree with the judge that "trial counsel did not err in failing to raise the issue of GSR transference between the sweatshirt and the firearm, as he did so through effective cross-examination of the Commonwealth's witnesses."

Even assuming, arguendo, that the defendant satisfied the first prong of the ineffective assistance test, he has nonetheless failed to satisfy the prejudice prong of the test. The Commonwealth presented other evidence at trial that tied the defendant to the firearm besides the presence of GSR on the defendant's sweatshirt. A DNA sample obtained from the trigger of the firearm contained a "mixture of at least two individuals," and the major DNA profile "matched the DNA profile from [the defendant]." Further, the defendant's presence in a vehicle that left the area where the firearm was found at a "high rate of speed" also suggested a connection to the firearm.

In the absence of any showing of prejudice, the motion judge did not abuse her discretion in denying the defendant's sixth motion for new trial.[3]

2. _Motion to dismiss indictments_.  The defendant next claims that a Superior Court judge abused his discretion in denying the defendant's motion to dismiss the indictments in view of the "substantial preliminary showing" by the defense that "false testimony was knowingly or recklessly presented to the grand jury."  Specifically, the defendant claims that Detective Lyons' testimony before the grand jury that (1) the recovered firearm was found in the "kangaroo pocket" of the sweatshirt and (2) the sweatshirt appeared discarded "in a haphazard manner," had "no basis in the associated police reports and were contradicted by later trial testimony."[4]  The claim is unavailing.

---

[3] We are likewise unpersuaded by the defendant's argument that the judge abused her discretion by declining to hold an evidentiary hearing on his sixth motion for new trial.  See Commonwealth v. Muniur M., 467 Mass. 1010, 1011 (2014), quoting Mass. R. Crim. P. 30 (c) (3), as appearing in 435 Mass. 1501 (2001) (judge may rule on new trial motion without holding evidentiary hearing if, in judge's discretion, "no substantial issue is raised by the motion or affidavits").

[4] The police reports stated only that the firearm was found "inside of the sweatshirt," and was "wrapped inside this black sweatshirt."  At trial, Officer Hussey testified that he found the sweatshirt "folded up a little bit," and that the firearm was "wrapped inside the sweatshirt."

10

We review the denial of a motion brought pursuant to rule 30 (a) for an abuse of discretion or error of law. Commonwealth v. Perez, 480 Mass. 562, 567 (2018). Rule 30 (a) permits a defendant to seek the correction of an illegal sentence. Commonwealth v. Layne, 21 Mass. App. Ct. 17, 19 (1985). The rule "was not intended to provide an avenue for plenary appellate review," but instead "was designed to enable defendants to challenge the legality or the technical basis of a sentence." Commonwealth v. Christian, 429 Mass. 1022, 1023 (1999). Rule 30 (a) is thus not the proper vehicle to challenge purportedly false grand jury testimony. Even assuming that the claim was properly raised, "[m]inor discrepancies, if there were any, between the evidence presented to the grand jury and the evidence presented, or expected to be presented, at trial cannot invalidate the indictment." Commonwealth v. Dilone, 385 Mass. 281, 284 (1982). Thus, the judge did not abuse his discretion.

3. _Motion to revise and revoke_. The defendant also argues that a Superior Court judge abused his discretion by denying the motion to revise and revoke the defendant's sentence because the verdict was reduced from ACC with three predicate convictions (level three) to ACC with two predicate convictions (level two). He also argues, for the same reason, that the judge erred in

11

allowing the Commonwealth's motion to correct the docket.[5]  We disagree.

We review the denial of a motion to revise and revoke pursuant to rule 29 (a) (2) for an abuse of discretion.  See Commonwealth v. Tejeda, 481 Mass. 794, 795-796 (2019).  The purpose of rule 29 (a) (2) is to allow a judge to consider "whether the sentence imposed was just 'in light of the facts as they existed at the time of sentencing'" (emphasis and citation omitted).  Id. at 796.

The defendant relies on an entry in the docket from February 16, 2011, that stated, "Correction Date:  02/16/2011" and allegedly reflects a conviction under G. L. c. 269, § 10G (b) (level two ACC).  The defendant fails to cite to anything in the record that would suggest that this is not a clerical error.  The defendant was indicted and tried as a level three ACC, and the verdict slip supports that he was convicted of that enhancement.  There is no evidence in the record that an oral motion to reduce the conviction was argued or allowed on February 16, 2011, or that any hearing was held on that date.[6]

---

[5] In allowing the Commonwealth's motion to correct the docket, the judge changed the statute referenced on the docket and the mittimus from G. L. c. 269, § 10G (b) (level two ACC), to G. L. c. 269, § 10G (c) (level three ACC).

[6] Handwritten notes from the Superior Court clerk on the back of the indictment state that the defendant was sentenced on February 15, 2011, and that the "execution of said sentence" was stayed until the following day.  On February 16, 2011, the

12

Although trial counsel for the defendant on the ACC case averred in an affidavit that it was his "recollection" that there was a "short hearing on the issue of the defendant's prior convictions," he does not aver that the judge reduced the conviction to level two ACC. That the clerk refused to add language to the mittimus in August 2011 also does not support the defendant's claim that his conviction had been reduced. Further, in a motion for relief from unlawful confinement filed in 2017, the defendant acknowledged that he was convicted and sentenced as a level three ACC.

Finally, for the reasons outlined above, we conclude that the judge did not abuse his discretion in allowing the Commonwealth's motion to correct the docket. "Clerical mistakes in judgments, orders, or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party." Mass. R. Crim. P. 42, 378 Mass. 919 (1979). The judge did not "change the sentence itself" but rather conformed the mittimus and the docket to reflect "the original sentence." Commonwealth v. Clark, 53 Mass. App. Ct. 342, 346 (2001).[7]

---

clerk's notes state only: "Stay revoked -- Sentence in full force and effect mitt issued."

[7] To the extent that we have not specifically addressed subsidiary arguments in the defendant's brief, they have not been overlooked. We find nothing in them that requires further

Conclusion. The orders dated May 8, June 10, and August 22 of 2019, denying the defendant's fifth motion for a new trial and two motions for reconsideration of that decision, are affirmed. The order dated October 28, 2019, denying the defendant's motion to dismiss the indictments, is affirmed. The orders dated March 31, 2021, (1) denying the defendant's motion for funds for postconviction discovery, and (2) denying the defendant's motion to revise and revoke his sentence and allowing the Commonwealth's motion to correct the docket, are

---

discussion. See Commonwealth v. Domanski, 332 Mass. 66, 78 (1954).

14

affirmed.  Finally, the order dated February 29, 2024, denying the defendant's sixth motion for a new trial, is affirmed.

<u>So ordered</u>.

By the Court (Rubin, Neyman & Tan, JJ.[8]),

Clerk

Entered:  August 4, 2025.

---

[8] The panelists are listed in order of seniority.